Nathaniel K. Charny (NC 5664)
Charny & Associates
9 West Market Street, Suite B
Rhinebeck, New York  12572
Tel - 845-876-7500
Fax - 845-876-7501
ncharny@charnyandassociates.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADONAI GUERRERO VAZQUEZ, JESUS AGUILAR HERNANDEZ, ARTURO AGUILAR HERNANDEZ,  JOSE LUIS OLMOS RODRIGUEZ, JOSE SOLOZANO, ROBERTO CABRALES MARTINEZ, SAMUEL ROSALES RIOS and RAFAEL HERNANDEZ ALVAREZ in their individual capacities and as representatives of those similarly situated,<br><br>       Plaintiffs,<br><br>  v.<br><br>PANTELIS KARAGEORGIS, in his individual capacity, PETER'S FINE GREEK FOOD INC., E. JAMES STRATES, in his individual capacity, STRATES SHOWS, INC., RAUL HOFFMAN and JUAN ANTONIO GONZALEZ,<br><br>       Defendants. | **FIRST AMENDED COMPLAINT**<br><br>**Civ. Action No. 10-cv-04839 (RRM) (RML)**<br><br>**CLASS ACTION** |

## INTRODUCTION

1.  This is an action brought by Plaintiffs on behalf of themselves and others similarly situated to recover for damages inflicted by Corporate Defendant Peter's Fine Greek Food Inc., Corporate Defendant Strates Shows, Inc., and their principals, recruiters and agents,

1

for violations of human trafficking and wage and hour laws.

2.      During a period of at least three years, and, upon information and belief, the last six years, Plaintiffs and others similarly situated were trafficked into the United States through the federal government's H-2B guestworker program to provide manual labor on behalf of Defendants Peter's Fine Greek Food Inc., as it engaged in the business of food concessions as part the travelling carnival business of Defendant Strates Shows, Inc.   Defendants have exploited and defrauded Plaintiffs by fraudulently recruiting them to work in the United States under false contractual promises, only to subject them to psychological coercion, threats of serious harm, abhorrent working conditions, deplorably low wages and threatened abuse of the legal process to maintain control over Plaintiffs and other class members.

3.      After being transported from Mexico, Plaintiffs were made to sleep in an overcrowded and tick-infested trailer as the Defendants moved through locations in various states.  Further, Defendants intermittently confiscated Plaintiffs' passports and threatened deportation and the preclusion of Plaintiffs' ability to ever return to the United States to work.  In addition, Defendants required Plaintiffs to work excessively long hours in performing their duties, typically working seventeen (17) hour days, for many days in a row, without compensation of the minimum wage and/or overtime pay for all hours worked, and without timely compensation.  To the extent the Plaintiffs were paid at all, it was months later and at a wage rate ranging from $1.00 per hour to $3.00 per hour.

4.      Plaintiffs bring this action individually, as a collective action for claims arising under the Fair Labor Standards Act ("FLSA"), and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for claims arising under the Trafficking Victims Protection Reauthorization Act ("TVPRA"); the Racketeer Influenced and Corrupt Organizations Act

("RICO"); the Alien Tort Claims Act ("ATCA"); and state law claims for damages under New York Labor Law ("NYLL") and breach of contract.

## JURISDICTION

5.      Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1337 (Acts of Congress regulating commerce), 18 U.S.C. § 1595(a) (civil trafficking), 18 U.S.C. § 1964(c) (RICO), 28 U.S.C. § 1350 (ATCA) and 29 U.S.C. § 216(b) (FLSA).  Jurisdiction over the Plaintiffs' claims for declaratory relief is conferred by 28 U.S.C. §§ 2201 and 2202.

6.      This Court has supplemental jurisdiction over the state claims raised by virtue of 28 U.S.C. § 1367(a).

## VENUE

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the District.

## PARTIES

8.      Plaintiff Adonai Guerrero Vázquez is a Mexican national who was employed by Defendants during certain periods of time from 2008 to the present.

9.      Plaintiff Jesús Aguilar Hernández is a Mexican national who was employed by Defendants during certain periods of time from 2009 to the present.

10.     Plaintiff Arturo Aguilar Hernández is a Mexican national who was employed by Defendants during certain periods of time from 2009 to the present.

11.     Plaintiff José Luis Olmos Rodríguez is a Mexican national who was employed by Defendants during certain periods of time from 2010 to the present.

12.     Plaintiff José Solozano is a Mexican national who was employed by Defendants

during certain periods of time from 2010 to the present.

13.     Plaintiff Roberto Cabrales Martínez is a Mexican national who was employed by Defendants during certain periods of time from 2010 to the present.

14.     Plaintiff Samuel Rosales Ríos is a Mexican national who was employed by Defendants during certain periods of time from 2010 to the present.

15.     Plaintiff Rafael Hernández Alvarez is a Mexican national who was employed by Defendants during certain periods of time from 2010 to the present.

16.     Plaintiffs were engaged in commerce while working for Defendants.

17.     Corporate Defendant Peter's Fine Greek Food Inc. ("Peter's Fine Greek Food") is a New York State Corporation based in Astoria, New York.  It lists its address as 22-42 Steinway Street, Astoria, New York, 11105.

18.     Defendant Karageorgis is the principal of Corporate Defendant Peter's Fine Greek Food and acted directly and indirectly in Corporate Defendant's interest in relation to its employees, including Plaintiffs, and is thus an employer of Plaintiffs within the meaning of 29 U.S.C. § 203(d).

19.     At all times relevant to this action, Defendant Karageorgis exercised control over significant aspects of the day-to-day functions of Corporate Defendant Peter's Fine Greek Food, including:  (i) operational control over Corporate Defendant's operational enterprise, including actively managing, supervising and directing Corporate Defendant's business operations; (ii) power to establish, and did establish, the terms of employment of the Plaintiffs; (iii) power to hire and fire; (iv) having control over employee work schedules; (v) having the ability to determine the rate and method of employee payment; and (vi) maintaining employment records of the employing entity.

20.     Upon information and belief, Defendant Karageorgis resides in Queens, New York.

21.     Corporate Defendant Strates Shows, Inc. ("Strates Shows"), a corporation organized under the laws of Delaware, is a traveling carnival that does business for nine months of the year in various states of the United States.  Corporate Defendant Strates Shows employs various individuals and businesses that operate rides, games and concessions. It lists its address as P.O. Box 174, Orlando, Florida, 32802.

22.     Defendant Strates is the principal of the Corporate Defendant Strates Shows, and acted directly and indirectly in Corporate Defendant Strates Shows' interest in relation to its employees, including Plaintiffs, and is thus an employer of Plaintiffs within the meaning of 29 U.S.C. § 203(d).

23.     Upon information and belief, Defendant Strates resides in Orlando, Florida.

24.     Throughout this Complaint, Defendant Karageorgis and Defendant Strates are referred to collectively as "Principal Defendants."

25.     Throughout this Complaint, Corporate Defendant Peter's Fine Greek Food and Corporate Defendant Strates Shows are referred to collectively as "Corporate Defendants."

26.     Defendant Raúl Hoffman is a recruiter in Mexico who, upon information and belief, acted as an agent of Corporate Defendants during the recruitment of Plaintiffs for their employment with Corporate Defendants through the 2009 traveling carnival season.

27.     Upon information and belief, Defendant Hoffman resides in Mexico.

28.     Defendant Juan Antonio González is a recruiter in Mexico who, upon information and belief, acted as an agent of Corporate Defendants during the recruitment of Plaintiffs for their employment with Corporate Defendants for the 2010 traveling carnival season.

29.     Upon information and belief, Defendant González resides in Mexico.

30.     Throughout this Complaint, Defendants Raúl Hoffman and Juan Antonio González are referred to collectively as "Recruiter Defendants."

31.     Defendants collectively operate an enterprise engaged in commerce within the meaning of the FLSA.

32.     Upon information and belief, for each of the six years preceding the filing of this Complaint, Defendants have employed two or more individuals handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

33.     Upon information and belief, Corporate Defendants each grossed more than $500,000 in the past fiscal year.

## FACTS

34.     In or about July 2008, Plaintiff Guerrero Vázquez was informed of available work in the United States working for Defendants.  At that time, Plaintiff Vasquez met with Defendant Hoffman, who lived in Puebla, Mexico.  Defendant Hoffman advised Plaintiff Guerrero Vázquez that arrangements would be made for an H-2B Visa, to be sponsored by Corporate Defendant Strates Shows.  At that time, Plaintiff Guerrero Vázquez was also informed that Defendant Karageorgis would be Plaintiff Guerrero Vázquez's supervisor.

35.     In or about July 2008, Plaintiff Guerrero Vázquez met with Defendant Hoffman and four other workers, who together travelled to Monterrey, Mexico, where they joined another 30 workers before crossing the border into the United States.

36.     Upon information and belief, Defendant Hoffman paid for the visa fees, the border crossing fees and for the bus carrying the 35 total workers as they crossed the border from Nuevo Laredo, Mexico to Laredo, Texas.

37.     At the time of his hiring by Defendants, Plaintiff Guerrero Vázquez signed a written Contract for Temporary Employment which set out a fixed hourly rate and overtime pay pursuant to applicable law.  Upon information and belief, the hourly rate set in the 2008 Contract was at least $10.00 per hour, less some amount (upon information and belief $25 per week) for housing.

38.     Upon information and belief, Plaintiff Guerrero Vázquez' contract, which included descriptions of his job duties and salary,  was sent by mail and/or wire to one or more of the Principal Defendants and Corporate Defendants.

39.     There then ensued a bus ride through many different states, during which there were many stops where groups of workers would get off the bus and, upon information and belief, work within the different states.  Plaintiff Guerrero Vázquez was told to exit the bus in Danbury, Connecticut at which time he began working for Defendant Peter Karageorgis and Corporate Defendant Peter's Fine Greek Food at Corporate Defendant Strates Shows, with whom he worked and traveled for the remainder of his 2008 employment..

40.     Upon information and belief, for the period of time from July 2008 up through and including October 11, 2008, Defendant Karageorgis and Corporate Defendant Peter's Fine Greek Food were contracted as a food concessioner with Corporate Defendant Strates Shows.

41.     Plaintiff Guerrero Vázquez's jobs duties and responsibilities included:  preparing food, chopping vegetables and meats, cooking and serving food; setting up and breaking down the tents where the food was sold; and washing all the tarps and tents.

42.     Defendant Karageorgis regularly and routinely appeared on the various job sites in 2008 to supervise and manage the operation and affairs of the workplace.

43.     For the period of time July 2008 up through and including October 11, 2008, Plaintiff Guerrero Vázquez regularly and routinely worked 16-17 hours per day, and worked consecutive days without a day of rest typically for 15-20 days in a row.

44.     During this period of time, Plaintiff Guerrero Vázquez was paid between $2.00 per hour and $4.00 per hour.

45.     During this period of time, Plaintiff Guerrero Vázquez was paid at least four weeks after the completion of each work week, and often times much later.

46.     During this period of time, Defendants failed to remit to Plaintiff Guerrero Vázquez:  the minimum wage; spread of hour wages under NYLL; and overtime pay.

47.     The following Spring, on or about March 27, 2009, Plaintiff Guerrero Vázquez met up with Defendant Hoffman and Plaintiffs Jesús Aguilar Hernández and Arturo Aguilar Hernández (who are brothers) to return to the United States and again work for Defendant Karageorgis and Corporate Defendant Peter's Fine Greek Food.

48.     Upon information and belief, during this period of time, Defendant Karageorgis and Corporate Defendant Peter's Fine Greek Food were contracted as a food concessioner with Corporate Defendant Strates Shows.

49.     The sponsor of the H-2B Visas was, this time, Corporate Defendant Peter's Fine Greek Food.

50.     At the time of these Plaintiffs' hiring by Defendants in 2009, these Plaintiffs signed a written Contract for Temporary Employment which set out a fixed hourly rate and overtime pay pursuant to applicable law.  Upon information and belief, the hourly rate set in the 2009 Contract was at least $10.00 per hour, less some amount (upon information and belief $25 per week) for housing.

51.     Upon information and belief, the contracts of these Plaintiffs, which included descriptions of their job duties and salaries, were sent by mail and/or wire to one or more of the Principal Defendants and Corporate Defendants.

52.     These Plaintiffs' jobs duties and responsibilities included:  preparing food, chopping vegetables and meats, cooking and serving food; setting up and breaking down the tents where the food was sold; and washing all the tarps and tents.

53.     In addition, Plaintiff Arturo Aguilar Hernández was assigned the responsibility of driving the Defendants' semi-truck from Syracuse to New York City, notwithstanding that Plaintiff was not properly licensed for such duties.

54.     For the period of time March 2009 until and through October 2009, Plaintiffs Guerrero Vázquez, Jesús Aguilar Hernández and Arturo Aguilar Hernández were told to sleep in a small trailer that was infested with ticks and/or bed bugs as they were taken through the various states to work.

55.     Defendant Karageorgis regularly and routinely appeared on the various job sites in 2009 to supervise and manage the operation and affairs of the workplace.

56.     For the period of time March 2009 until and through October 2009, Plaintiffs Guerrero Vázquez, Jesús Aguilar Hernández and Arturo Aguilar Hernández worked for Defendants routinely:  (i) in excess of forty hours in a week; (ii) in excess of ten hours in one day; and (iii) without a day of rest for periods of two to three weeks in a row.  In addition, Defendants failed to pay these Plaintiffs in a timely fashion, typically paying these Plaintiffs at least four weeks after the completion of each work week, and often times much later.

57.     During this period of time, these Plaintiffs were paid approximately $1.00 per hour for their time.

58.     At the conclusion of the work period, in or about October 2009, these Plaintiffs were returned to New York City and required to purchase their own plane tickets back to Mexico.

59.     The following spring, on or about April 16, 2010, Plaintiffs met up with Defendant González for purposes of working in the United States for Principal and Corporate Defendants.  After securing H-2B Visas for the Plaintiffs, the Plaintiffs were brought to the United States and began work for Defendant Karageorgis and Corporate Defendant Peter's Fine Greek Food .

60.     At the time of these Plaintiffs hiring by Defendants in 2010, Plaintiffs signed a Contract for Temporary Employment which established their hourly wage at $10.71 per hour less $25 per week for housing.

61.     Upon information and belief, Plaintiffs' contracts, which included descriptions of their job duties and salaries, were sent by mail and/or wire to one or more of the Principal and Corporate Defendants.

62.     Plaintiffs' jobs duties and responsibilities included:  preparing food, chopping vegetables and meats, cooking and serving food; setting up and breaking down the tents where the food was sold; and washing all the tarps and tents.

63.     In addition, Plaintiff Arturo Aguilar Hernández was assigned the responsibility of driving the Defendants' semi-truck from Syracuse to New York City, notwithstanding that Plaintiff Arturo Aguilar Hernández was not properly licensed for such duties.

64.     For the period of time April 16, 2010 through and including September 6, 2010, Plaintiffs were told to sleep in a small trailer that was infested with ticks and/or bed bugs as they were taken through the various states to work.

65.    Defendant Karageorgis regularly and routinely appeared on the various job sites in 2010 to supervise and manage the operation and affairs of the workplace.

66.     For the period of time April 16, 2010 through and including September 6, 2010, the Plaintiffs worked for Defendants routinely:  (i) in excess of forty hours in a week; (ii) in excess of ten hours in one day; and (iii) without a day of rest for periods of two to three weeks in a row.  In addition, Defendants failed to pay these Plaintiffs in a timely fashion, typically paying these Plaintiffs at least four weeks after the completion of each work week, and often times much later.

67.    During this period of time, the average pay received by the Plaintiff's was $1.00 per hour.

68.    Over the course of at least the last three years, when Plaintiffs and other employees complained about not being paid their full wages, Defendant Karageorgis made threats which included:

    a.  termination;

    b.  decrease in pay;

    c.  preventing their ever returning to the United States to work;

    d.  cancellation of their visas; and

    e.  deportation.

69.    Over the course of at least the last three years, Defendant Karageorgis routinely confiscated Plaintiffs' passports during varying periods of time of the Plaintiffs' employment.

70.    Upon information and belief, for the period at least as far back as six years from the date of commencement of this action, there have been hundreds of Mexican nationals treated in the same violative fashion in regards to human rights violations and the payment of wages.

71.     The aforementioned behavior constituted a scheme, plan or pattern knowingly undertaken by the Defendants that was intended to coerce Plaintiffs to continue to work in deplorable conditions by making them believe that they would suffer serious harm if they were to leave the employ of Defendants.

72.     Defendants engaged in a pattern of activity related to their common goal to recruit, obtain, transport, process and provide workers through the use of fraudulent promises, forced labor and trafficking.

73.     Defendants' behavior toward Plaintiffs violated international law.

74.     Defendants' failure to pay the Plaintiffs the minimum wage spread of hour wages and overtime wages required by law was willful.

75.     Defendants' failure to pay the Plaintiffs in a timely fashion was willful.

76.     All actions and omissions described in this Complaint were made by Defendants directly or through their supervisory employees and agents.

## COLLECTIVE ACTION AND
## CLASS ACTION ALLEGATIONS

77.     For purposes of both the FLSA collective action and the Rule 23 class action, the Class is defined as:  All non-exempt workers employed by Defendants through H-2B Visas for the period October 20, 2004 to the present.

78.     Defendants have acted and refused to act on grounds generally applicable to the class members with respect to the claims thereby making final injunctive relief and/or declaratory relief applicable to the Class appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

79.     The precise number of individuals in the Class is known only to Defendants. Upon information and belief, the Class includes over 100 individuals.

80.     Joinder of all Class members is impracticable.

81.     There are questions of law and fact common to the Class.

82.     Plaintiffs' claims are typical of, and identical to the claims of the Class.  The failure of Defendants to comply with the TVPRA, RICO, ATCA, FLSA and NYLL served to deprive all Class members of the protection of these laws.

83.     Plaintiffs will fairly and adequately protect the interests of the Class.

84.     Plaintiffs' counsel are experienced in conducting class actions in federal courts. Plaintiffs' counsel is prepared to advance costs necessary to litigate this matter zealously, including the costs of Class notice.

85.     The common claims of Plaintiffs and the Class predominate over any claims affecting individual Class members.

86.     Plaintiffs' interests in the claims are in no way antagonistic or adverse to those of other class members.

87.     A class action under Rule 23 of the Federal Rules of Civil Procedure is superior to other available methods of adjudicating the claims because, inter alia:

     i.     Common issues of law and fact, as well as the relatively small claim of each Class member, substantially diminishes the interest of members of the Class in individually controlling the prosecution of separate actions;

     ii.     Many of the Class members are unaware of their rights to prosecute these claims and lack the means and resources to secure legal assistant;

     iii.     There has been no litigation already commenced by any member(s) of the Class to determine the questions presented; and

iv.  A class action can be managed without undue difficulty since Defendants
have regularly committed the violations complained of herein and were
required to maintain detailed records concerning each member of the
Class.

## FIRST CAUSE OF ACTION
### THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT
Forced Labor, 18 U.S.C. § 1589
*All Defendants*

88.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

89.    Plaintiffs are authorized to bring these civil claims against Defendants pursuant to the civil remedies provision of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595.

90.    Defendants knowingly attempted to and did subject Plaintiffs and other class members to forced labor in violation of 18 U.S.C. § 1589.

91.    Defendants knowingly attempted to and did threaten Plaintiffs and other class members with serious harm in order to obtain the labor and services of Plaintiffs and other class members in violation of 18 U.S.C. § 1589(2).

92.    Defendants knowingly threatened Plaintiffs and other class members with a decrease in wages, termination, deportation, the cancellation of their visas and the prevention of their ever returning to the United States in a manner that constitutes an abuse of the legal process under 18 U.S.C. § 1589(3).

93.    Defendants knowingly attempted to and did obtain the labor and services of Plaintiffs and other class members using a scheme, plan, or pattern that, in the totality of the circumstances, was intended to coerce and did coerce Plaintiffs and other class members to

14

believe that they would suffer serious harm if they were to leave the employ of Defendants in violation of 18 U.S.C. § 1589(4).

94.     Plaintiffs and other class members suffered injury as a proximate result of these actions.

95.     Plaintiffs and other class members are entitled to compensatory and punitive damages and any other relief deemed appropriate, including attorneys' fees.

### SECOND CAUSE OF ACTION
THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT
Trafficking with respect to peonage, slavery, involuntary servitude, or forced labor,
18 U.S.C. § 1590
*All Defendants*

96.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

97.     Plaintiffs are authorized to bring these civil claims against Defendants pursuant to the civil remedies provision of the TVPRA, 18 U.S.C. § 1595.

98.     Defendants knowingly recruited, transported and harbored Plaintiffs and other class members for labor or services in violation of laws prohibiting peonage, slavery, involuntary servitude and forced labor within the meaning of the provisions of the TVPRA, 18 U.S.C. § 1590.

99.     Specifically, in violation of 18 U.S.C. § 1590, and in addition to the violations of 18 U.S.C. § 1589 set forth in the First Cause of Action, Defendants knowingly recruited, transported and harbored Plaintiffs and other class members for labor or services in furtherance of the Defendants' violations of the following provisions of Title 18, Chapter 77 of the U.S. Code:

      a.   knowingly and willfully holding Plaintiffs to involuntary servitude, as defined by

the TVPRA, 22 U.S.C. § 7102(5)(a) and (b), in violation of 18 U.S.C. § 1584(a);

b.  knowingly removing, confiscating or possessing passports in the course of a violation of, or with the intent to violate 18 U.S.C. §§ 1584, 1589 and 1590, in violation of 18 U.S.C. § 1592(a)(1) and (2);

c.  attempting to violate 18 U.S.C. §§ 1584, 1589 and 1590, in violation of 18 U.S.C. §1594(a).

d.  knowingly benefitting financially from participation in a venture which has engaged in violations of 18 U.S.C. §§ 1592 and 1595(a), in violation of 18 U.S.C. § 1593A.

100.  As a proximate result of the conduct of the Defendants, Plaintiffs and other class members have suffered damages.

101.  Plaintiffs and other class members are entitled to compensatory and punitive damages and any other relief deemed appropriate, including attorneys' fees.

### THIRD CAUSE OF ACTION
RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d)
*All Defendants*

102.  Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

103.  Plaintiffs' and other class members' claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, are brought against all Defendants.

104.  Plaintiffs and other class members are "persons" with standing to sue within the meaning of 18 U.S.C. § 1964(c).

105.  Each of the Defendants is a "RICO person" within the meaning of 18 U.S.C. § 1961(3).

106.    All Defendants constitute an association-in-fact, and therefore an enterprise ("RICO Enterprise I"), within the meaning of 18 U.S.C. § 1961(4).

107.    Defendant Karageorgis, Corporate Defendant Peter's Fine Greek Food and Recruiter Defendants constitute an association-in-fact, and therefore an enterprise ("RICO Enterprise II") within the meaning of 18 U.S.C. § 1961(4).

108.    Defendant Karageorgis, Corporate Defendant Peter's Fine Greek Food and Corporate Defendant Strates Shows constitute an association-in-fact, and therefore an enterprise ("RICO Enterprise III") within the meaning of 18 U.S.C. § 1961(4).

### The RICO Enterprises

#### RICO Enterprise I

109.    RICO Enterprise I is an ongoing business relationship between all Defendants with the common purpose of recruiting, transporting, providing, processing and obtaining foreign workers to work at Corporate Defendant Peter's Fine Greek Food, and, upon information and belief, additional employers unknown at the present time, during the periods that Corporate Defendant Peter's Fine Greek Food traveled with and prepared and sold concessions for the traveling carnival business of Corporate Defendant Strates Shows.

110.    RICO Enterprise I is engaged in interstate commerce in that its activities and transactions relating to the international and interstate movement of workers affect interstate commerce and frequently require travel and communications across state and international lines.

111.    The members of RICO Enterprise I functioned as a continuing unit, with a structure apart from the mere coming together for the purposes of committing the criminal predicate acts.

112.    The members of RICO Enterprise I conducted or participated in, and/or conspired

to conduct or participate in the affairs of RICO Enterprise I through a pattern of numerous acts of racketeering activity in violation of 18 U.S.C. § 1962(c) and (d), related by their common goal to recruit, obtain, transport, process and provide workers through the use of fraudulent promises, forced labor and trafficking.

113.   Specifically, Defendants conducted or participated in and/or conspired to conduct the affairs of RICO Enterprise I by engaging in the following predicate acts of racketeering activity under 18 U.S.C. § 1961(1):

a.   Forced labor in violation of 18 U.S.C. § 1589;

b.   Trafficking persons for the purpose of forced labor and involuntary servitude in violation of 18 U.S.C. § 1590;

c.   Extortion in violation of 18 U.S.C. § 1951;

d.   Mail and/or wire fraud to further their unlawful scheme in violation of 18 U.S.C. §§ 1341 and 1343; and

e.   Interstate and foreign travel to further unlawful acts in violation of 18 U.S.C. § 1952.

<u>RICO Enterprise II</u>

114.   RICO Enterprise II is an ongoing business relationship between Defendant Peter Karageorgis, Corporate Defendant Peter's Fine Greek Food and the Recruiter Defendants with the common purpose of recruiting, transporting, providing, processing and obtaining foreign workers to work at Corporate Defendant Peter's Fine Greek Food, and, upon information and belief, additional employers unknown at the present time, during the periods that Corporate Defendant Peter's Fine Greek Food traveled with and prepared and sold concessions for the traveling carnival business of Corporate Defendant Strates Shows

115.   RICO Enterprise II is engaged in interstate commerce in that its activities and transactions relating to the international and interstate movement of workers affect interstate commerce and frequently require travel and communications across state and international lines.

116.   The members of RICO Enterprise II functioned as a continuing unit, with a structure apart from the mere coming together for the purposes of committing the criminal predicate acts.

117.   The members of RICO Enterprise II conducted or participated in, and/or conspired to conduct or participate in the affairs of RICO Enterprise II through a pattern of numerous acts of racketeering activity in violation of 18 U.S.C. § 1962(c) and (d), related by their common goal to recruit, obtain, transport, process and provide workers through the use of fraudulent promises, forced labor and trafficking.

118.   Specifically, Defendants conducted or participated in and/or conspired to conduct the affairs of RICO Enterprise II by engaging in the following predicate acts of racketeering activity under 18 U.S.C. § 1961(1):

    a.   Forced labor in violation of 18 U.S.C. § 1589;

    b.   Trafficking persons for the purpose of forced labor and involuntary servitude in violation of 18 U.S.C. § 1590;

    c.   Extortion in violation of 18 U.S.C. § 1951;

    d.   Mail and/or wire fraud to further their unlawful scheme in violation of 18 U.S.C. §§ 1341 and 1343; and

    e.   Interstate and foreign travel to further unlawful acts in violation of 18 U.S.C. § 1952.

<u>RICO Enterprise III</u>

119.    RICO Enterprise III is an ongoing business relationship between Defendant Peter Karageorgis, Corporate Defendant Peter's Fine Greek Food and Corporate Defendant Strates Shows with the common purpose of recruiting, transporting, providing, processing and obtaining foreign workers to work at Corporate Defendant Peter's Fine Greek Food, and, upon information and belief, additional employers unknown at the present time,  during the periods that Corporate Defendant Peter's Fine Greek Food traveled with and prepared and sold concessions for the traveling carnival business of Corporate Defendant Strates Shows.

120.    RICO Enterprise III is engaged in interstate commerce in that its activities and transactions relating to the international and interstate movement of workers affect interstate commerce and frequently require travel and communications across state and international lines.

121.    The members of RICO Enterprise III functioned as a continuing unit, with a structure apart from the mere coming together for the purposes of committing the criminal predicate acts.

122.    The members of RICO Enterprise III conducted or participated in, and/or conspired to conduct or participate in the affairs of RICO Enterprise III through a pattern of numerous acts of racketeering activity in violation of 18 U.S.C. § 1962(c) and (d), related by their common goal to recruit, obtain, transport, process and provide workers through the use of fraudulent promises, forced labor and trafficking.

123.    Specifically, Defendants conducted or participated in and/or conspired to conduct the affairs of RICO Enterprise III by engaging in the following predicate acts of racketeering activity under 18 U.S.C. § 1961(1):

    a.   Forced labor in violation of 18 U.S.C. § 1589;

b.   Trafficking persons for the purpose of forced labor and involuntary servitude in violation of 18 U.S.C. § 1590;

c.   Extortion in violation of 18 U.S.C. § 1951;

d.   Mail and/or wire fraud to further their unlawful scheme in violation of 18 U.S.C. §§ 1341 and 1343; and

e.   Wire fraud to further their unlawful scheme in violation of 18 U.S.C. § 1343; and

f.   Interstate and foreign travel to further unlawful acts in violation of 18 U.S.C. § 1952.

## **Predicate Acts**

### Forced Labor:  18 U.S.C. § 1589

124.    As set forth in the preceding paragraphs, Defendants in RICO Enterprises I, II and III willfully, knowingly and intentionally committed and/or conspired to commit multiple predicate acts of forced labor in violation of 18 U.S.C. § 1589 as discussed in Plaintiffs' First Cause of Action

125.    These predicate acts of forced labor furthered the unlawful scheme of RICO Enterprises I, II and III to profit from the recruiting, obtaining and provision of foreign workers for work in the United States through fraudulent promises and engaging in exploitative and coercive labor practices.

### Trafficking for the Purposes of Forced Labor and/or Involuntary Servitude:  18 U.S.C. § 1590

126.    As set forth in the preceding paragraphs, Defendants in RICO Enterprises I, II and III willfully, knowingly and intentionally committed and/or conspired to commit multiple predicate acts of trafficking for the purposes of forced labor and/or involuntary servitude in violation of 18 U.S.C. § 1590 as discussed in Plaintiffs' Second Cause of Action.

127. These predicate acts of forced labor furthered the unlawful scheme of RICO Enterprises I, II and III to profit from the recruiting, obtaining and provision of foreign workers for work in the United States through fraudulent promises and engaging in exploitative and coercive practices.

<u>Extortion:  18 U.S.C. § 1951</u>

128. As set forth in the preceding paragraphs, Defendants in RICO Enterprises I, II and III willfully, knowingly and intentionally committed and/or conspired to commit multiple predicate acts of extortion in violation of 18 U.S.C. § 1951.

129. Predicate acts of extortion, committed by Defendants in RICO Enterprises I, II and III and executed in reponse to Plaintiffs' complaints of woefully inadequate compensation for work performed, included threats of

     a.  deportation;

     b.  cancellation of visas;

     c.   termination;

     d.   reduction of pay; and

     e.  prevention of workers from ever returning to or working in the United States again,

130. These willful, knowing and intentional acts amounted to the unlawful extortion of Plaintiffs' property interest in contractually promised wages, in violation of 18 U.S.C. § 1951.

<u>Mail and/or Wire Fraud:  18 U.S.C. §§ 1341 and 1343</u>

131. As set forth in the preceding paragraphs, Defendants in RICO Enterprises I, II and III made and/or conspired to make false promises regarding wages and other benefits in a scheme calculated to defraud Plaintiffs out of large sums of money.

132.    As set forth in the preceding paragraphs, upon information and belief, Defendants in RICO Enterprises I, II and III used mail and/or wire communications via telephone, fax and/or email on numerous occasions to relay Plaintiffs' H-2B contracts in order to further this fraudulent scheme.

133.    These willful, knowing and intentional acts constitute wire fraud in violation of 18 U.S.C. § 1343.

Unlawful Acts In Support of Racketeering Enterprises Through
Interstate and Foreign Travel:  18 U.S.C. § 1952

134.    As set forth in the preceding paragraphs, Defendants in RICO Enterprises I, II and III regularly engaged in and/or conspired to engage in interstate and/or foreign travel to carry on their unlawful activities.

135.    Defendants in RICO Enterprises I, II and III frequently engaged in interstate and/or foreign travel to effectuate the fraudulent schemes discussed above.

136.    These willful, knowing and intentional acts violated 18 U.S.C. § 1952.

**Pattern of Racketeering Activity**

137.    Defendants in RICO Enterprises I, II and III have engaged in the racketeering activity described in this Third Cause of Action repeatedly for at least the past three years and, upon information and belief, for at least the past six years.

138.    Upon information and belief, the RICO Enterprises discussed above plan to continue their racketeering activities as the carnival season commences in 2011.

139.    Defendants rely on the racketeering activity described above to conduct their regular business activities.

140.    Defendants' racketeering acts have similar purposes:  to profit from the recruitment and forced labor of Plaintiffs and other class members, and to recruit, obtain, provide

and maintain a consistent H-2B guestworker labor force for Defendants' operations.

141.    Defendants' acts have yielded similar results and caused similar injuries to Plaintiffs and other class members, including the loss of personal property, lost work opportunities and lost or unpaid wages.

142.    As set forth in the preceding paragraphs, the racketeering acts have similar participants:  Defendants Peter Karageorgis and E. James Strates, the Corporate Defendants and the Recruiter Defendants.

143.    As set forth in the preceding paragraphs, Defendants directed their racketeering activities at similar victims: Mexican workers who established contact with the Recruiter Defendants in search of temporary stable employment in the United States.

144.    Defendants' racketeering activities have similar methods of commission, such as common recruitment tactics, and the use of similar employment practices and policies, including severe underpayment of wages, with respect to Plaintiffs and other class members.

### Injury

145.    As a direct and proximate result of Defendants' willful, knowing and intentional acts discussed in this Sixth Cause of Action, Plaintiffs and other class members have suffered injuries to their property and/or business, including but not limited to:  loss of personal property, lost and unpaid wages, lost employment opportunities and other pecuniary loss.

146.    Plaintiffs are entitled to an award of damages, including treble damages and attorneys' fees and costs associated with this action.

## FOURTH CAUSE OF ACTION
### ALIEN TORT CLAIMS ACT, 28 U.S.C. § 1350
Involuntary Servitude and Forced Labor
*All Defendants*

147.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

148.    Plaintiffs bring this claim against Defendants Peter Karageorgis and E. James Strates, and Corporate Defendants Peter's Fine Greek Food and Strates Shows.

149.    This Court has jurisdiction over these violations of international law pursuant to the Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350.

150.    Defendants subjected Plaintiffs to involuntary servitude and/or forced labor, which are violations of the law of nations and customary international law as reflected, expressed and defined in multilateral treaties and other international instruments, international and domestic judicial decisions and other authorities.

151.    One international instrument defines forced labor as "all work or service which is exacted from any person under the menace of any penalty and for which the said person has not offered himself voluntarily."  Convention Concerning Forced or Compulsory Labor art. 2, May 1, 1932, 39 U.N.T.S. 55.

152.    The above-named Defendants knowingly and willfully engaged in acts including, but not limited to, psychological coercion, threats of serious harm and threats of abuse of the legal process as documented in the Second Cause of Action above.

153.    Aiding and abetting involuntary servitude and/or forced labor is also in violation of the law of nations and treaties of the United States and is actionable through the ATCA, 28 U.S.C. § 1350.

154.    Defendants aided and abetted the imposition of involuntary servitude and/or

forced labor by directing, ordering, conspiring to commit or aiding the imposition of involuntary servitude and/or forced  labor.

155.    Plaintiffs and other class members are entitled to compensatory and punitive damages and any other relief deemed appropriate.

**FIFTH CAUSE OF ACTION**
ALIEN TORT CLAIMS ACT, 28 U.S.C. § 1350
Human Trafficking
*All Defendants*

156.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

157.    Plaintiffs bring this claim against all Defendants.

158.    This Court has jurisdiction over these violations of international law pursuant to the ATCA 28 U.S.C. § 1350.

159.    Defendants engaged in human trafficking, which is a violation of the law of nations and customary international law as reflected, expressed and defined in multilateral treaties and other international instruments, international and domestic judicial decisions and other authorities.

160.    One international instrument defines human trafficking as:

> the recruitment, transportation, transfer, harbouring or receipt of persons, by means of the threat of use of force or other forms of coercion, of abduction, of fraud, of deception, of the abuse of power or of a position of vulnerability or of the giving or receiving of payments or benefits to achieve the consent of a person having control over another person, for the purpose of exploitation.

Protocol to Prevent, Suppress, and Punish Trafficking in Persons, Especially Women and Children, Supplementing the United Nations Convention Against Transnational Crime art. 1, Nov. 15, 2003, 55 U.N. GAOR Supp. (No. 49) at 60, U.N. Doc. A/45/49 (Vol. 1) (2001), 20 I.L.M. 335.

161.    Defendants knowingly and willfully engaged in acts including, but not limited to, the recruitment, transportation, transfer, harboring and/or receipt of Plaintiffs.  These acts were conducted through the use of force, the threat of force, abduction, fraud, deception, the abuse of power and/or a position of vulnerability.

162.    Defendants trafficked Plaintiffs for the purposes of obtaining forced labor or services.

163.    Aiding and abetting human trafficking is also in violation of the law of nations and treaties of the United States and is actionable through the ATCA, 28 U.S.C. § 1350.

164.    Defendants aided and abetted human trafficking by directing, ordering, conspiring to commit or aiding human trafficking.

165.    Plaintiffs and other class members are entitled to compensatory and punitive damages and any other relief deemed appropriate.

**SIXTH CAUSE OF ACTION**
FAIR LABOR STANDARDS ACT
29 U.S.C. §201 et seq.
*Principal Defendants Peter Karageorgis and E. James Strates, and Corporate Defendants*
*Peter's Fine Greek Food Inc. and Strates Shows, Inc.*

166.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

167.    Defendants failed to pay to the Plaintiffs and others similarly situated minimum wage, overtime and timely wages as required by the Fair Labor Standards Act, 29 U.S.C. §201 et seq., and its implementing regulations.

168.    Defendants' failure to pay the required minimum wage, overtime and timely wages was willful within the meaning of 29 U.S.C. §255.

169.    Defendants' failure to comply with the FLSA caused Plaintiffs to suffer loss of

wages.

## SEVENTH CAUSE OF ACTION
### NEW YORK LABOR LAW
*Principal Defendants Peter Karageorgis and E. James Strates, and Corporate Defendants Peter's Fine Greek Food Inc. and Strates Shows, Inc.*

170.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

171.     Defendants failed to pay Plaintiffs minimum wage, overtime wages, spread of hours wages and timely wages in violation of New York Labor Law Articles 6 and 19 and their implementing regulations.

172.     Defendants failed to provide Plaintiffs one day of rest in seven, as required by NYLL.

173.     Defendants' failure to comply with New York wage and hour protections caused Plaintiffs to suffer loss of wages and interest thereon.

## EIGHTH CAUSE OF ACTION
### BREACH OF CONTRACT
*All Defendants*

174.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

175.     By their course of conduct set out in this Complaint, Defendants acted in breach of their contract with the Plaintiffs by failing to pay to the Plaintiffs the guaranteed hourly rate set out in the "Contract for Temporary Employment" entered into between the parties.

176.     Defendants breach of the Contract caused the Plaintiffs to suffer damages.

WHEREFORE, Plaintiffs request that this Court enter an order:

a.      Certifying this cause as a class action in accordance with Federal Rule of Civil Procedure 23(a) and 23(b)(3) with respect to claims under TVPRA, RICO, ATCA, NYLL and Breach of Contract (Counts I through V, VII and VIII);

b.      Certifying this matter as a Collective Action under FLSA (Count VI);

c.      Declaring that the Defendants violated TVPRA, RICO, ATCA, FLSA and NYLL;

d.      Declaring that the Defendants' violation of TVPRA, RICO, ATCA, FLSA and NYLL were intentional, knowing and/or willful;

e.      Enjoining the Defendants from committing future violations of TVPRA, RICO, ATCA, FLSA and NYLL;

f.      Granting compensatory and punitive damages to Plaintiffs and others similarly situated for their claims of violations of the TVPA and ATCA.

g.      Granting treble damages to Plaintiffs and others similarly situated for their claims of violations of RICO.

h.      Granting judgment to Plaintiffs and others similarly situated for their claims of unpaid wages as secured by FLSA as well as an equal amount in liquidated damages;

i.      Granting judgment to Plaintiffs and others similarly situated for claims under NYLL as well as an additional twenty-five percent in liquidated damages and prejudgment interest;

j.      Granting judgment to Plaintiffs and others similarly situated for breach of contact;

k.       Awarding Plaintiffs and others similarly situated costs and reasonable attorneys fees; and

l.      Granting such further relief as the Court finds just and equitable.

Dated: Rhinebeck, New York
      January 24, 2011

Nathaniel K. Charny (NC 5664)
Charny & Associates
9 West Market Street, Suite B
Rhinebeck, New York  12572
Tel - 845-876-7500
Fax - 845-876-7501
ncharny@charnyandassociates.com

Milan A. Bhatt (MB 6843)
Workers Rights Law Center of New York, Inc.
101 Hurley Street, Suite 5
Kingston, NY 12401
Tel - (845) 331-6615
Fax - (845) 331-6617
mbhatt@wnylc.com

David O. Irving*
Farmworker Legal Services of New York
1187 Culver Rd.
Rochester, NY 14609
Tel - 585-325-3050
Fax - 585-325-7614
dirving@wnylc.com

*Admission pro hac vice will be requested

Attorneys for Plaintiffs